**TIMOTHY A. SCOTT**
California Bar No. 215074
SCOTT TRIAL LAWYERS, APC
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
Facsimile: (619) 652-9964
Email: tas@scotttriallawyers.com

Attorneys for Nicholas Escarcega

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Nicholas Escarcega,<br><br>　　　　　Defendant. | Case No. 2:18-cr-00173-GW<br><br>Defendant Nicholas Escarcega's Sentencing Memorandum<br><br>Date: September 28, 2020<br><br>Time: 8:00 a.m. |

## I.
## Introduction

　　Defendant Nicholas Escarcega, by and through counsel, respectfully submits his sentencing memorandum in support of his sentencing recommendation. Ultimately, Mr. Escarcega joins the Probation Office's recommendation for a 36-month sentence to be served concurrently with his current undischarged term of imprisonment.

## II.
## Statement of Facts

Mr. Escarcega is 37 years old and a longtime resident of Southern California. He had a difficult childhood. He "was primarily raised by his mother as his father was absent for much of his life." Presentence Report ("PSR") ¶ 83. "His parents struggled financially, and the family moved often…because of money problems." *Id*. Mr. Escarcega had a strained relationship with his father, who abandoned the family when Mr. Escarcega was only 9 years old. PSR ¶ 84. Mr. Escarcega's father "said he was going to the store but didn't return for years." *Id*. His father ended up in custody, and upon returning to the family suffered a brain clot that left him disabled. PSR ¶ 85.

Aside from these struggles, Mr. Escarcega lived through additional hardships during these early years. When he was 12 years old, his brother was accidently shot in the face and almost died. PSR ¶ 87. Mr. Escarcega's brother "was shot at his girlfriend's house by a 9-year-old." *Id*. The child "aimed the gun at Mr. Escarcega's brother thinking that it was unloaded because the clip was out. However, it had a bullet in the chamber." *Id*. Mr. Escarcega has stated that "almost losing his brother was a traumatizing experience for him." *Id*.

Due to this difficult upbringing, Mr. Escarcega soon fell in the wrong acquaintances and began having run-ins with law enforcement. He suffered several convictions for minor property crimes as a teenager, and pled guilty to additional petty theft and robbery offenses as an adult. In 2013, Mr. Escarcega received an 11-year sentence for a robbery offense and was remanded to state prison to serve the time, which he is scheduled to complete in late 2021. *See* PSR ¶ 57.

It was in those circumstances that Mr. Escarcega became involved in the instant case. In early 2013, while in pretrial custody on the state offense, Mr. Escarcega participated in the beating of an inmate at the LA County Jail. Mr. Escarcega was standing nearby as other men began hitting the inmate, and briefly

joined in the assault due to the difficult realities of inmate politics in the custodial setting. Mr. Escarcega profoundly regrets his actions and has accepted responsibility for his involvement in the incident, pleading guilty after being charged in this case despite the significant troubles that it could cause for him due to the nature of the allegations in the indictment.

But in the nearly eight years since the incident, and despite these troubles, Mr. Escarcega has dedicated himself to his rehabilitation. He has been a loving husband to his wife Michelle and a caring father to their 7-year-old daughter Nikki. *See* PSR ¶ 88. As Michelle has stated, "they have a good relationship and he is her best friend." *Id*. She describes Mr. Escarcega as "compassionate, supportive, and loving." *Id*. Mr. Escarcega "maintains daily contact with his daughter" and Michelle acknowledges that he "is a good father and is trying to be a better person for his daughter." *Id*. Moreover, Mr. Escarcega has maintained good conduct and behavior while in custody and has avoided further involvement in prison politics or any similar situations.

Mr. Escarcega is deeply ashamed and remorseful for having placed himself in this position. He asks to the Court for an opportunity to return to his family and make amends for his conduct. In light of these facts, Mr. Escarcega makes his sentencing recommendations in this case.

## III.
## Advisory Guidelines calculations

The base offense level for the offense of conviction is 14 pursuant to U.S.S.G. §§ 2A2.2(a) and 2X1.1(a). A five-level enhancement also applies under U.S.S.G. § 2A2.2(b)(3)(B). Mr. Escarcega should then receive -3 for acceptance of responsibility, for a final offense level of 16. At criminal history VI, the advisory Guideline range is 46-57 months, reduced to 36 months pursuant to U.S.S.G. § 5G1.1(a) due to the applicable statutory maximum. As discussed below, a 36-

month sentence, to run concurrently with Mr. Escarcega's existing term of imprisonment, would be appropriate in this case.

### A. The sentence in this case should run concurrently with Mr. Escarcega's undischarged term of imprisonment.

The Probation Office recommends that Mr. Escarcega's sentence in this case "shall be served concurrently to any undischarged term of imprisonment in Los Angeles County Superior Court, Case No. PA074596." *See* Revised Recommendation Letter, Docket 2461, at 1. Mr. Escarcega agrees with the recommendation.

18 U.S.C. § 3584(b) states that "[t[he court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." Additionally, the Guidelines require a consecutive sentence to be imposed only when a defendant has already been sentenced on the prior term of imprisonment, which was not the case here because Mr. Escarcega committed the instant offense in April 2013 and was not sentenced until November 2013. *See* U.S.S.G. § 5G1.3(a) ("If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.") In all other cases, "the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(d). In making this determination, the Court should consider the 3553(a) factors, "[t]he type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence, the time served on the undischarged sentence and the time likely to be served before

release, the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; [and] any other circumstance relevant to the determination of an appropriate sentence for the instant offense." *See* Application Note 4 to U.S.S.G. § 5G1.3.

Here, these factors heavily favor a concurrent sentence in this case. Mr. Escarcega has been in continuous custody since 2012 on his current undischarged term of imprisonment and has one year remaining on that offense. He would still need to serve two more years in federal custody in this case after finishing that sentence, which is a significant amount of time and would amount to a decade in continuous custody for Mr. Escarcega. And while Mr. Escarcega understands the seriousness of his actions in this case, regrets his conduct, and fully accepts responsibility, his involvement in the conspiracy alleged in this case pales in comparison to the role of other defendants. Mr. Escarcega had no role in the broader scope of the enterprise or any of the actions alleged in the indictment beyond the incident to which he pleaded guilty. He is not a high-ranking or significant member of any organization, enterprise, or conspiracy, and had a minor involvement in the overall scope of the scheme alleged by the government in this case.

Finally, Mr. Escarcega's loved ones recognize him to be a loving husband and caring father, and he has maintained good conduct and behavior in the nearly 8 years since the incident that led to his conviction in this case. Mr. Escarcega is committed to moving past the mistakes of his youth if given the opportunity by the Court. For all these reasons, a 36-month concurrent sentence would be sufficient, but not greater than necessary, to achieve the goals of U.S.S.G. § 5G1.3(d) and 18 U.S.C. § 3553(a).

## IV.

## Sentencing Under Booker and 3553(a)

After *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory only, representing but one factor among many to be considered in imposing sentence under 18 U.S.C. § 3553(a). The Supreme Court has held that "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).

Here, for all the reasons described in the Statement of Facts and Sentencing Guidelines discussion, the Court should impose a 36-month concurrent sentence. Mr. Escarcega regrets his actions in this case and has accepted full responsibility. Even with a concurrent sentence here, he is still facing an additional three years in custody before reuniting with his family. His actions in this case happened nearly eight years ago, after which Mr. Escarcega has remained out of trouble and committed to serving his sentence with the best possible conduct and without involvement in prison politics. His years in custody since the incident have impressed upon him the need to move beyond the mistakes of his youth, and he can do so if given the opportunity by the Court. A 36-month concurrent sentence would be sufficient in these circumstances.

//
//
//
//
//
//
//

## V.
## Conclusion

For all these reasons, the Court should sentence Mr. Escarcega to 36 months' custody, to be served concurrently with his current undischarged term of imprisonment.

Respectfully Submitted,

Dated: September 9, 2020    *s/ Timothy A. Scott*
**TIMOTHY A. SCOTT**
SCOTT TRIAL LAWYERS, APC
Attorney for Mr. Escarcega