TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
SHAWN J. NELSON (Cal. Bar No. 185149)
Assistant United States Attorney
Chief, International Narcotics,
 Money Laundering & Racketeering Section
MAX B. SHINER (Cal. Bar No. 187125)
Assistant United States Attorney
Deputy Chief, Violent & Organized Crime Section
KEITH D. ELLISON (Cal. Bar No. 307070)
Assistant United States Attorney
International Narcotics, Money
 Laundering & Racketeering Section
     1400/1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: 213-894-5339/3308/6920
     Facsimile: 213-894-0142
     E-mail: shawn.nelson@usdoj.gov
             max.shiner@usdoj.gov
             keith.ellison2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>               v.<br><br>JOSE LANDA-RODRIGUEZ, et al.,<br> [#58-NICHOLAS ESCARCEGA]<br><br>           Defendants. | No. CR 18-00173-GW-58<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT NICHOLAS ESCARCEGA'S MOTION TO WITHDRAW PLEA OF GUILTY<br><br>Hearing Date: April 19, 2021<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom of the<br> Honorable George H. Wu |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Shawn J. Nelson, Max B. Shiner, and Keith D. Ellison hereby files its Opposition to

Defendant Nicholas Escarcega's (#58) Motion to Withdraw Plea of Guilty [CR 2887] (the "Motion").

    This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 6, 2021,　　　　　　　　Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

  /S/ *Max B. Shiner*
_____
SHAWN J. NELSON
MAX B. SHINER
KEITH D. ELLISON
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

**Contents**                                                                **Page**

TABLE OF CONTENTS....................................................1

TABLE OF AUTHORITIES.................................................i

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.   INTRODUCTION....................................................1

II.  FACTS...........................................................2

     A.   The Plea Agreement.........................................2

     B.   The Guilty Plea............................................3

     C.   The Presentence Report and Indicated Sentence..............6

     D.   The Motion to Withdraw Plea................................8

III. ARGUMENT........................................................9

     A.   Legal Standard Governing Motions to Withdraw a Guilty
          Plea.......................................................9

     B.   Defendant Has Not Established a Fair and Just Reason
          for Withdrawal of His Guilty Plea.........................11

          1.   Defendant Was Properly Advised.......................12

          2.   The Accurate Advisements Render Defendant's Claim
               Meritless............................................13

          3.   Defendant's Motion Relies on Claims that he Made
               False Representations to the Court...................14

     C.   Defendant's Change of Heart is not a Sufficient
          Justification for Withdrawing his Guilty Pleas............15

IV.  CONCLUSION.....................................................16

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

United States v. Barker,
    514 F.2d 208 (D.C. Cir. 1975).................................11

United States v. Davis,
    428 F.3d 802 (9th Cir. 2005)...............................9, 14

United States v. Ensminger,
    567 F.3d 587 (9th Cir. 2009).............................10, 11

United States v. Hamilton,
    568 F.2d 1302 (9th Cir. 1978)................................13

United States v. Hyde,
    520 U.S. 670 (1997)..........................................10

United States v. McTiernan,
    546 F.3d 1160 (9th Cir. 2008).................................9

United States v. Moore,
    599 F.2d 310 (9th Cir. 1979).................................15

United States v. Navarro-Flores,
    628 F.2d 1178 (9th Cir 1980).................................11

United States v. Nostratis,
    321 F.3d 1206 (9th Cir. 2003)................................11

United States v. Rios-Ortiz,
    830 F.2d 1067 (9th Cir. 1987)................................10

United States v. Rubalcaba,
    811 F.2d 491 (9th Cir. 1987).................................13

United States v. Showalter,
    569 F.3d 1150 (9th Cir. 2009)..............................9, 11

Yothers v. United States,
    572 F.2d 1326 (9th Cir. 1978)................................13

**FEDERAL RULES**

Fed.R.Crim.P. 11(d)(2)(B)......................................9, 11

Fed.R.Crim.P. 32..................................................11

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Nicholas Escarcega moves to withdraw his plea out of obvious disappointment in the sentence he is likely to receive. Defendant's clear hope was that he would receive a fully concurrent sentence. Having been advised that whether he would receive a fully concurrent sentence would be up to the Court, defendant pleaded guilty. After this Court advised defendant that the Court intended to impose a one-year consecutive sentence, defendant moved to withdraw his plea.

Defendant was fully advised of the penalties he faced by pleading guilty. Before pleading guilty, he was told: (1) that he was continuing to serve his state sentence; (2) that he could not also be given credits against his federal sentence for time spent serving his state sentence; and (3) the Court had discretion to take all of this into account in fashioning its sentence, including by ordering its sentence to be served concurrently with or consecutive to the remainder of defendant's state sentence.

Under oath, defendant repeatedly stated that he understood and had no questions about the potential sentence or the consequences of pleading guilty. Defendant averred that no other representations or guarantees had been made to him about his sentence other than what was in the plea agreement. Defendant also stated that he understood that he would not be able to withdraw his plea if he was not satisfied with the Court's sentence. Knowing all of this, defendant made the conscious and informed decision to plead guilty.

///

///

Defendant now moves to withdraw that guilty plea, making several claims that are contradicted by the record in this case. First, defendant claims he did not understand that he would not receive credit against his federal sentence for his time served on his state sentence, despite (1) the clear record, which shows that defendant raised this very issue during the change of plea hearing, was correctly advised, and stated that his concerns had been satisfied, and (2) defendant's own declaration, in which he states that his counsel informed him that he would not receive any such credits. Second, defendant claims he is innocent of the offense, despite swearing under oath that he did indeed commit the offense and averring to the truth of the facts supporting his guilt. Consequently, there is no fair and just reason to permit defendant to withdraw his valid guilty plea.

## II.  FACTS

### A.  The Plea Agreement

Defendant was charged in Count Three of the Indictment with Violent Crime in Aid of Racketeering ("VICAR"), that is, a conspiracy to assault resulting in great bodily injury. (Revised Presentence Report ("PSR") ¶¶ 2-3.) On March 13, 2020, defendant entered into a plea agreement in which he agreed to plead guilty to the charge, and the government agreed not to charge him with a RICO violation. (CR 2241 (the "Plea Agreement.") The plea agreement advised defendant that he could be sentenced to up to three years' imprisonment. (Plea Agreement at ¶ 7.) The plea agreement also stated that defendant understood that the Court sentence defendant up to the maximum established by statute, and that defendant understood

///

2

that he could not withdraw his plea if such a sentence was imposed. (Plea Agreement at ¶ 26.)  Defendant further agreed that:

> Defendant understands that ***no one -- not*** the prosecutor, ***defendant's attorney,*** or the Court -- ***can make a binding prediction or promise regarding the sentence defendant will receive***, except that it will be within the statutory maximum.

Id. (emphasis added).  The Plea Agreement made very clear that "there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court." (Plea Agreement ¶ 27.)  Defendant signed the plea agreement and further certified:

> I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. . . . No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement or in an agreement signed by all parties or on the record in court. . . . I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

(Plea Agreement at p.16.)

    **B.   The Guilty Plea**

A change of plea hearing was held on May 11, 2020.  Prior to inquiring about defendant's understanding of the consequences of a guilty plea, the Court advised defendant, "[I]f at any point in time during the process, if I speak too fast, you don't understand what I'm saying, or you want to talk with your attorney for whatever reason, feel free to tell me to stop. I will always stop and allow

///

3

1  you to talk with counsel." (Transcript of Change of Plea Hearing
2  (Exhibit 1) at p.6.) Defendant said that he understood. Id.
3      The Court advised defendant that he would be placed under oath,
4  and that if he gave any false answer to any questions, it could
5  result in perjury charges. Id. Defendant then agreed to the oath
6  administered by the courtroom deputy. Id. at 7. Defendant was
7  informed of the nature and elements of the charge against him, and
8  stated that he understood the charge and had no questions about it.
9  Id. at pp.8-11.
10     After being advised of his constitutional rights, defendant
11 advised the Court that his attorney had a specific question. Defense
12 counsel, the Court, and government counsel then discussed the issue
13 of whether defendant could receive credit for time he had been in
14 custody at MDC. Id. at pp.12-16. The government informed the Court
15 and counsel that since defendant was currently in the middle of
16 serving his state sentence, the law required that his custody be
17 credited to his state sentence, and the law did not allow defendant
18 to get double credits by applying that time to his federal sentence
19 as well. Id. at p.14.
20     The government further explained that the Court had full
21 discretion on whether to sentence defendant to additional time in
22 this case, because there is no mandatory minimum prison term, and the
23 Court could also decide to run any sentence concurrent with (the
24 remainder of) the state sentence. Id. at pp.14-15. Therefore, the
25 government explained, defendant would be sent back to state prison to
26 finish his state sentence, and when that sentence was finished he
27 would be brought back to federal custody if there was any time on the
28 federal sentence left to be served. Id. at p.15. The Court took

4

note that it could impose a concurrent sentence and specifically asked the government if it would oppose a concurrent sentence; the government responded that it had not determined if it would oppose a concurrent sentence or not.

The Court then had the government (again) inform the defendant of the penalties he faced by pleading guilty. The government that the Court could impose a sentence of up to three years' imprisonment. Id. at p.16. Defendant told the Court that he understood the sentence he faced. Id. at p.18. Defendant represented that he had signed the plea agreement, had discussed it with his attorney, and that he understood all of its terms and conditions. Id. at pp.19-20. The Court further informed defendant that the Court was not a party to the plea agreement, and when asked if he understood, defendant asked, "So, if I have a miscommunication that I won't be able to withdraw my plea if I'm not satisfied with your findings..." Id. at pp.20-21. The Court further explained:

> Yes, in other words, let's put it this way, for example, the government has indicated to you that the maximum sentence you can get is three years in this case.
>
> In other words, I cannot, no matter what happens, sentence you to more than three years in this case, even if I thought what you did was horrendous; that is No. 1.
>
> But No. 2, however, is that you are going to be sentenced under the Sentencing Reform Act of 1984, as I have indicated, and under the guidelines, because they take into account things like criminal history background and other factors, it may give a sentencing range of something that is less than three years. In other words, it could be under the guidelines you would get 13 months -- between 13 months, and 24 months, which is less than the three years.

Defendant replied, "Okay. I can't go over three years."

Defendant stated that he had enough time to go over the plea agreement with his attorney and had no questions about it. Id. at

5

p.22. Defendant affirmed that no promises, representations, or guarantees had been made to him other than what was in the plea agreement. Id. at pp.22-23. After further colloquy with defense and government counsel, defendant again affirmed that he understood everything that had been discussed at the hearing and had no questions. Id. at 27.

Government counsel recited a factual basis for the plea, which included a description of the racketeering enterprise and defendant's agreement to the assault conspiracy in order to gain, maintain, or increase his position in the enterprise. Id. at pp.29-31. Defendant swore that these facts were true and correct and stated that he is pleading guilty because he did the things that were charged in the Indictment and described in the plea agreement, and because he was guilty of the crime. Id. at p.32. The Court found that defendant was aware of the nature and consequences of his plea, that the plea was knowingly, intelligently, and voluntarily made. Id. at p. 34.

### C. The Presentence Report and Indicated Sentence

The Presentence Report (CR 2397) was disclosed on June 15, 2020 and calculated a Guidelines sentence of 36 months' imprisonment (the statutory maximum). The Guidelines would have called for a sentence of 46 to 57 months, but the statutory maximum was three years. (PSR ¶ 96.)

The PSR noted that defendant had been convicted of second-degree robbery in Los Angeles County Superior Court on August 22, 2013 and sentenced to 11 years' state prison. (PSR ¶ 58.) Defendant had been in state custody since September 2012, and the offense had been committed on or about April 23, 2020, while he was in state custody awaiting trial or resolution of the robbery case. (PSR ¶ 19.) The

United States Probation and Pretrial Services Office (the "Probation Office") noted that USSG § 5G1.3(d), which gives the Court discretion to run the sentence concurrently, partially concurrently, or consecutively to the state sentence, applied. (PSR ¶¶ 97-98.) The Probation Office recommended a sentence of 36 months, to be served consecutively to defendant's state sentence. (CR 2396.)

Subsequent to disclosure of the PSR, the Probation Office interviewed defendant and revised the PSR to reflect information from the interview. (CR 2463; Revised PSR (CR 2462) ¶¶ 81-102.) During the interview, held more than a month after his plea, defendant stipulated to the factual basis contained in the plea agreement. (Revised PSR ¶ 26.) The Probation Office then revised its sentencing recommendation, recommending that the 36-month sentence be imposed to run concurrently to any undischarged term of imprisonment on the state case. (CR 2461.)

The government objected to a consecutive sentence, arguing that while the Court has discretion to sentence defendant to any term and to make that term concurrent with the state sentence, USSG § 5G1.3(d) provides clear guidance that a consecutive sentence should not be imposed where the instant offense and the undischarged state sentence are unrelated. (CR 2488.)

Defendant filed a sentencing position asking the Court to impose the Probation Office's recommended 36-month sentence, to run concurrently with the undischarged portion of the state sentence. (CR 2597.)

The Probation Office responded to the government's objection, stating that the concurrent sentence appeared to be sufficient and ///

that it rendered a variance below the Guidelines sentence unnecessary. (CR 2622.)

At a hearing on October 5, 2020, defendant indicated he might wish to move to withdraw his guilty plea, and the Court continued the sentencing hearing and ordered a status report regarding the possible motion. (CR 2665.) On October 20, 2020, defense counsel moved to withdraw from representing defendant. On October 29, 2020, the Court informed the parties that it was willing to review the sentencing materials and inform defendant of the sentence the Court's intended to impose before defendant decided whether to bring the motion to withdraw his plea. (CR 2706.)

On November 5, 2020, the Court informed the parties that his tentative sentence would be 12 months and one day, to run consecutive to the state sentence. (CR 2714.)

Shortly thereafter, on November 9, 2020, defendant informed the Court that he did wish to move to withdraw his guilty plea, and the Court stated that it would hear the motion, and granted defense counsel's request to withdraw as counsel.

**D. The Motion to Withdraw Plea**

Defendant filed his Motion to withdraw his guilty plea on March 23, 2021. (CR 2827.) In his declaration in support of the Motion, defendant claims that he pled guilty because he was informed by his attorney that he would receive credits against his federal sentence for the time served on his state sentence. (Declaration of Nicolas Escarcega at ¶ 9.) However, defendant goes on to state that prior to commencement of the change of plea hearing, his attorney informed him that he would not, in fact, receive those credits. He added that he pled guilty because of his attorney's belief that, based on the same

8

evidence, he "could conceivably be" charged with a RICO offense carrying a maximum sentence of 20 years. (Id.; Declaration of Timothy A. Scott at ¶ 8.)

Defendant, while continuing to admit he committed the underlying assault, also claims that he is innocent of the VICAR conspiracy to assault charge, despite his repeated, under oath statements that he did in fact commit the acts constituting the offense. (Declaration of Nicolas Escarcega at ¶¶ 2, 5, 16.)

Defendant's attorney stated he informed defendant "essentially that his time at the MDC should count towards his federal sentence." But on the date of the guilty plea, the government corrected this impression. (Declaration of Timothy A. Scott at ¶¶ 6, 9.) Because the Court observed that it could still sentence defendant to concurrent time, which could render the issue moot, counsel continued to advise defendant that he continue with the guilty plea. (Declaration of Timothy A. Scott at ¶¶ 11, 12.)

**III. ARGUMENT**

**A.   Legal Standard Governing Motions to Withdraw a Guilty Plea**

Prior to sentencing, a defendant can only withdraw his guilty plea by showing a "fair and just reason" for withdrawal. Fed.R.Crim.P. 11(d)(2)(B). The defendant bears the burden of establishing a fair and just reason. United States v. Davis, 428 F.3d 802, 805 (9th Cir. 2005); United States v. Showalter, 569 F.3d 1150, 1154 (9th Cir. 2009). Fair and just reasons include "inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." United States v. McTiernan, 546 F.3d 1160, 1167-69 (9th Cir. 2008). They do

not include a change of heart, even a good-faith one.  United States v. Rios-Ortiz, 830 F.2d 1067, 1069 (9th Cir. 1987).  The Supreme Court has explained that this standard does not permit a defendant to withdraw his guilty plea "simply on a lark" or whenever the government cannot show prejudice, especially "[a]fter the defendant has sworn in open court that he actually committed the crimes, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, and after the court has explicitly announced that it accepts the plea."  United States v. Hyde, 520 U.S. 670, 676-77 (1997) (referring to guilty plea as a "grave and solemn act, which is accepted only with care and discernment" and not "a mere gesture, a temporary and meaningless formality reversible at the defendant's whim"); see also United States v. Ensminger, 567 F.3d 587, 593 (9th Cir. 2009) ("Our prior decisions make clear that a change of heart - even a good faith change of heart - is not a fair and just reason that entitles the defendant to withdraw his plea, even where the government incurs no prejudice.") (cleaned up).

In determining whether a defendant has presented a "fair and just" reason for withdrawing a guilty plea, the Advisory Committee on Criminal Rules adopted guidelines developed in the case law:

> Although the terms "fair and just" lack any pretense of scientific exactness, guidelines have emerged in the appellate cases for applying this standard.  Whether the movant has asserted his legal innocence is an important factor to be weighed, as is the reason why the defenses were not put forward at the time of original pleading.  The amount of time which has passed between the plea and the motion must also be taken into account.

///

///

10

Fed.R.Crim.P. 32,[1] advisory committee note (1983) (citations and internal quotations omitted).  The timing of a defendant's Motion to withdraw his guilty plea, while not a dispositive factor, is an important one a court should consider when decided whether to permit such withdrawal.  United States v. Barker, 514 F.2d 208, 222 (D.C. Cir. 1975) (quoted in former Fed.R.Crim.P. 32, advisory committee note (1983)).  Indeed, this Ninth Circuit has applied the timeliness factor in affirming a denial of a motion to withdraw a guilty plea where there was a delay of only one month between the plea and the Motion, which was brought only after the defendant learned that his co-defendant had been sentenced to a term of imprisonment.  United States v. Navarro-Flores, 628 F.2d 1178, 1183-84 (9th Cir 1980).

A defendant's challenge to the denial of his Motion to withdraw his guilty plea is reviewed for abuse of discretion.  Ensminger, 567 F.3d at 590.  The factual findings supporting the district court's exercise of its discretion are reviewed for clear error.  Showalter, 569 F.3d at 1154.

**B. Defendant Has Not Established a Fair and Just Reason for Withdrawal of His Guilty Plea**

Defendant was properly advised that he could serve up to three years in prison for his offense.  At no point was defendant charged with a violation carrying a maximum sentence of imprisonment of more than three years.  And defendant fails to explain how his attorney's

---

[1] Before December 1, 2002, Rule 11(d)(2)(B) was found in Federal Rule of Criminal Procedure 32(e).  Despite minor changes to the rule, the "fair and just reason" standard remains the same.  United States v. Nostratis, 321 F.3d 1206, 1208 n.1 (9th Cir. 2003).  In addition, before 1994, Rule 32(e) was Rule 32(d).  See Fed. R. Crim. P. 11 Advisory Committee Notes (2002 Amendments); Fed. R. Crim. P. 32 Advisory Committee Notes (1994 Amendments).

11

concern for a superseding indictment charging such a violation, based on a review of the evidence, presents a "fair and just reason" to withdraw his plea, especially where the government, as part of the agreement negotiated by defense counsel, expressly agreed not to charge defendant with a RICO violation carrying a greater statutory maximum penalty. (Plea Agreement ¶ 3.)

Instead, defendant's primary claim is that he entered into his guilty plea because he was incorrectly informed that he would receive credit toward his federal sentence for the time his spent in custody at MDC. This claim must fail.

### 1. Defendant Was Properly Advised

First, defendant was properly advised, prior to entering his plea of guilty, that he would not receive custody credits for time he spent serving his state sentence. Defendant nevertheless went forward with the guilty plea, repeatedly stating that he fully understood the consequences and had no questions about the sentence he might receive.

Defendant admits that, prior to the change of plea hearing, he overheard his attorney and government counsel discussing this issue, and that his attorney advised him that he would not receive any credit for the time served in custody at MDC. (Declaration of Nicholas Escarcega at ¶ 10.) Furthermore, during the hearing, defendant was told that since he was currently in the middle of serving his state sentence, the law required that his custody be credited to his state sentence, and the law did not allow defendant to get double credits by applying that time to his federal sentence

///
///

as well.[2]  Id. at p.14.  Defendant was also told that the decision to impose a sentence that was concurrent or consecutive to the state sentence was up to the Court.  Id.  Defendant acknowledged these advisements and stated he was satisfied.  Id. at 16.

Defendant was also informed that he could be sentenced up to the maximum of three years' imprisonment.  Id. at 17.  Defendant stated that he understood the maximum sentence, had discussed it with counsel, and, in his own words, expressed his understanding by stating, "I can't go over three years."  Id. at 18, 21.

### 2. The Accurate Advisements Render Defendant's Claim Meritless

Defendant's claim that he believed he might be entitled to custody credits does not provide a basis to withdraw his guilty plea.  A trial court need not inform a defendant sentences may run consecutively.  United States v. Hamilton, 568 F.2d 1302, 1304-05 (9th Cir. 1978) (per curiam).  It follows that, similarly, there is no requirement to inform a defendant of the specifics of his custody credits.  Thus, defendant's claim that he entered his plea without an understanding of the penalties must fail.

In United States v. Rubalcaba, 811 F.2d 491 (9th Cir. 1987), the defendant made a similar claim to defendant's: that his failure to understand that sentences could run consecutively rendered his plea invalid.  However, the district court's recitation of the maximum possible penalties remedied defendant's alleged misunderstanding.  Id. at 494; see also Davis, 428 F.3d at 807 (noting that in

---

[2] There is no significance to the fact that the prosecutor provided the information regarding the penalties.  Federal Rule of Criminal Procedure 11 permits such a procedure.  Yothers v. United States, 572 F.2d 1326, 1328 n.2 (9th Cir. 1978).

13

Rubalcaba, 811 F.2d at 494, "the district court's recitation of the defendant's possible sentence at his plea hearing, specifying the possibility of consecutive sentences, countered exactly the alleged misinformation.").

Similarly here, defendant was informed that he could serve up to the maximum of three years in prison (evidenced, among other things, by defendant's statement, "I can't go over three years"), and was advised that the Court could order the sentence to run concurrent to his state sentence. This is sufficient to counter any claim that he entered his plea without knowledge of the maximum potential sentence or understanding that any sentence could possibly run concurrent to his state sentence.

### 3. Defendant's Motion Relies on Claims that he Made False Representations to the Court

Importantly, defendant's claims that he did not understand the consequences of his plea are undercut by his false representations to the Court. Defendant signed a plea agreement containing a detailed description of the facts of the offense, including his motivation for committing it. Then, having sworn an oath, with knowledge that false statements could subject him to perjury charges, defendant admitted that he was guilty of the charged offense. Furthermore, defendant agreed that he conspired to assault the victim in order to gain entrance to or to maintain or increase his position in the enterprise. (Exhibit 1 at p.31.) After hearing the factual basis recited, defendant told the Court that he understood the facts, that everything about his conduct and his intent was true and correct, and that he was pleading guilty because he did the things described in the plea agreement and because he was guilty of the crime. "Solemn

declarations in open court carry a strong presumption of verity." United States v. Moore, 599 F.2d 310, 314 (9th Cir. 1979); see also United States v. Rivera-Ramirez, 715 F.2d 453, 458 (9th Cir. 1983) (district court properly credited defendant's sworn statements at his plea hearing over subsequent contradictory assertions).

Further, more than a month after his plea, and contrary to defendant's claim that he immediately informed his attorney that he wished to withdraw his plea due to his innocence, defendant again stipulated to the same factual basis for the offense during his interview with the Probation Office. (Revised PSR ¶ 26.)

Defendant now claims, "I am innocent of the VICAR federal charge. In fact, I did not want to sign any plea agreement because the factual basis, as it involved the Mexican Mafia, was untrue." In light of his sworn statement, this claim lacks credibility and brings the remainder of his claims into doubt. The evidence that the instant offense was committed in conjunction with Mexican Mafia is overwhelming. The offense was committed with many co-conspirators, five of whom were charged in the same offense and have now pleaded guilty, admitting that the reason for the offense was their role in the Mexican Mafia LACJ Enterprise. Defendant's claims of innocence, while convenient for purposes of his Motion, lack any credibility.

**C. Defendant's Change of Heart is not a Sufficient Justification for Withdrawing his Guilty Pleas**

Both the timing of defendant's request to withdraw his guilty pleas and his arguments support the inference that his motivation is a change of heart brought about by his realization that he is likely to receive a sentence that will extend his time in custody beyond his state sentence.

15

Defendant's motion to withdraw his plea came several months after the change of plea hearing, and only after the Probation Office made an initial recommendation that any sentence imposed run consecutive to his state sentence. The Probation Office later revised its recommendation to concurrent time, but defendant continued to equivocate about his desire to withdraw his plea until the Court indicated that the sentence it was likely to impose would include additional prison time beyond what defendant was serving on his state sentence. Defendant, clearly hoping for a fully concurrent sentence, then moved to withdraw his plea.

Defendant clearly knew that additional prison time was a possible outcome from his guilty plea. The fact that defendant sought to determine if the Court would give him a sentence that met his expectations before seeking to withdraw his plea is the clearest indication that there is no fair and just reason to permit him to do so.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that that Motion be denied.